UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

MAY 3 1 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-495-GWU

ENESS D. COLLINS,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).   The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a <u>de minimis</u> hurdle in the disability determination process.  <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." <u>Id</u>., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

3

using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that the plaintiff suffered from "severe" asthma, hyperthyroidism, and possibly sleep apnea. (Tr. 19).[1]  While Collins was considered to be unable to perform his previous work, he was determined to be capable of performing a significant number of light level jobs compatible with environmental restrictions, as identified by a vocational expert (VE). (Tr. 18-20).  Thus, benefits were denied. (Tr. 21).

While the argument in the plaintiff's brief is very vague, it is obvious that the pivotal consideration in this case is the treatment of information from Treating Physician J. B. Blankenship.

---

[1]At one point in the opinion, the ALJ stated that he did not believe that the sleep apnea was an impairment and noted that no specialized studies had been performed. (Tr. 16).

4

Collins

Blankenship completed a form indicating that his patient was unable to work; on the same page, the physician indicated that findings were normal as to all indicated body systems. (Tr. 130). Virtually, the only other clinical findings or tests referred to on the form were a stress test and spirometric studies. (Id.) The pulmonary function testing had been said to be consistent with only moderate restriction and mild obstruction; there was "significant improvement" after administration of bronchodilators. (Tr. 119). A specialist had indicated after the stress testing that the plaintiff had only mild impairment of exercise tolerance and no sign of exercise-induced ischemia by clinical or EKG criteria. (Tr. 116). Blankenship himself also indicated on the original form that no sleep studies had been done to confirm the sleep apnea, which he had diagnosed. (Tr. 130). Thus, the ALJ correctly concluded that this is one of the rare instances where a treating source opinion simply is unsupported by clinical evidence. Moreover, the doctor also added some impermissible vocational statements into the mix, as when he noted that the patient was not trained for a desk job. (Id.)

Progress notes predating the form were also submitted by Blankenship. These noted things such as the plaintiff indicating, shortly before the alleged onset date, that he could "run a mile" despite his hypothyroid condition and, after the alleged onset date, that his cardiac tests had been negative. (Tr. 134).

5

Collins

Blankenship also completed a form indicating very severe limitations which were apparently based on a presumed diagnosis of sleep apnea, which had not yet been confirmed. (Tr. 155).

Reviewing these records, the agency physicians felt that his conditions were less than "severe" (Tr. 156-157) or showed the capacity for medium level exertion with environmental restrictions (Tr. 158-166).

Finally, a form was completed from Blankenship which cited severe restrictions, but added no rationale whatsoever. (Tr. 173).

Given these factors, the fact that the plaintiff admitted he was not certain why Blankenship had restricted him (Tr. 201), and for the reasons stated in the defendant's brief, the decision will be affirmed.

This the ___3/___ day of January, 2004.

G. WIX UNTHANK
SENIOR JUDGE

6